Filed 3/7/14

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| GEORGE SAFFIE, JR.,<br>     Plaintiff and Appellant,<br><br>v.<br><br>ROBERT SCHMELING,<br>     Cross-complainant and Appellant;<br><br>BURTON COMMERCIAL, INC. et al.,<br>     Cross-defendants and Respondents. | E055716<br><br>(Super.Ct.No. RIC500477)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. Mac R. Fisher and Craig Riemer, Judges. Affirmed.

Snyder Dorenfeld and David K. Dorenfeld for Plaintiff and Appellant George Saffie, Jr.

Reynolds, Jensen & Swan and Barry R. Swan for Cross-complainant and Appellant Robert Schmeling.

No appearance for Cross-defendants and Respondents Burton Commercial, Inc. and Yousef Sasa.

1

This case arises from a real estate transaction that did not turn out as well for the buyer, plaintiff George Saffie, Jr. (buyer), as he had hoped. Saffie brought suit against his broker, Anthony Burton (buyer's broker) and his firm, Burton Commercial, Inc., as well as the seller, Yousef Sasa (seller), and the seller's broker, Robert Schmeling (seller's broker). Defendants filed cross-complaints against one another for indemnification.

After a bench trial on buyer's claims, and a separate hearing regarding defendants' indemnification claims, the trial court decided that buyer should take nothing on his claims against seller and seller's broker, but found buyer's broker and his firm liable in the amount of $232,147.50 for breach of fiduciary duty and negligence.[1] The court held that none of the defendants should recover anything on their cross-complaints for indemnity.

Buyer appeals the trial court's judgment only with respect to its finding of no liability as to seller's broker. Seller's broker cross-appeals with respect to the trial court's ruling on his cross-complaint, seeking to revive his indemnification claims only if the trial court's judgment that he is not liable to buyer were to be reversed.

Buyer contends that seller's broker's statement on a multiple listing service was false or inaccurate. For the reasons stated below, the trial court's judgment will be

---

[1] The trial court notes in its June 30, 2011, tentative statement of decision that plaintiff's claims against Burton Commercial were dismissed pursuant to stipulation. The trial court's judgment, however, awards money damages to plaintiff against both Burton and Burton Commercial. Nevertheless, the question of whether the judgment awarded to plaintiff should be against both Burton and Burton Commercial, or against Burton alone, is not relevant to the disposition of this appeal.

affirmed. The affirmance renders the cross-appeal moot, and it will be dismissed; thus, neither the cross-appeal nor the cross-complaint will be further mentioned.

## I. FACTS AND PROCEDURAL BACKGROUND

In June 2006, seller's broker posted information about an undeveloped commercial parcel, 0.62 acres in size and located in Hemet, California, on a multiple listing service (MLS). (See Civ. Code,[2] § 1087 [defining "multiple listing service"].) Included in seller's broker's listing was the following language: "This parcel is in an earthquake study zone but has had a Fault Hazard Investigation completed and has been declared buildable by the investigating licensed geologist. Report available for serious buyers."

The Fault Hazard Investigation report seller's broker cited dates to 1982: "May 20, 1982" appears prominently on its cover. The report, prepared by a "Registered Geologist," finds "no evidence of an active fault" on the property, and concludes that "the secondary effects of ground fissuring and cracking and the primary effects of ground rupture and displacement on a fault are unlikely to occur on the subject property." The report makes certain recommendations regarding the potential forces and effects of earthquakes that "[t]he design of all commercial structures to be constructed on the subject property should take into consideration."

On July 23, 1982, an engineering geologist for the Riverside County Planning Department issued a letter granting "[f]inal approval of the report," based on his opinion

---

[2] All further citations to statutes are to the Civil Code unless otherwise specified.

3

that the report "was performed in a competent manner consistent with the present 'state-of-the-art' and satisfies the requirements of the Alquist-Priolo Special Studies Zones Act and the associated Riverside County Ordinance No. 547."

In 2006, buyer sought to purchase, through his broker and his firm, an undeveloped commercial parcel, with the intent of building a commercial building on the property. Buyer's broker brought to his attention the property owned by seller and listed in the MLS by seller's broker. In June 2006, buyer made an offer to purchase the property; seller made a counteroffer, which buyer accepted.

During escrow, prior to the close of the transaction, seller's broker gave buyer's broker a copy of the 1982 Fault Hazard Investigation report, together with the letter from the Riverside County Planning Department approving the report. Buyer's broker provided these documents in turn to buyer, but buyer's broker testified that he did so without reading the report or even understanding what a fault hazard investigation report is. Though buyer's broker testified that he told buyer to "check out" the report, the trial court found that buyer's broker led buyer to believe that the report was current and could be relied on as an indication that the property was "ready to build." The transaction closed without buyer or buyer's broker performing any further investigation in relation to geological issues on the property generally, or with respect to the Fault Hazard Investigation report in particular.

After the close of the transaction, when buyer began to try to develop the property, he discovered that the County of Riverside did not agree that the property was "ready to build." The County's understanding of the "state of the art" regarding investigation of

4

fault hazards had changed after the 1994 Northridge earthquake, and it no longer accepted fault hazard investigation reports performed under earlier standards. The additional geological investigation now required by the County for approval rendered buyer's intended use of the property impractical; such investigation would have required substantial excavation that, together with the small size of the parcel and required setbacks from such excavation for any construction, meant buyer could not feasibly move forward with his plans for a commercial building on the property.

After a bench trial on buyer's claims, the trial court issued a "Tentative Decision" on June 30, 2011, which it supplemented and incorporated by reference in an August 18, 2011, "Statement of Decision."

As noted, buyer appeals the trial court's judgment only with respect to seller's broker.

## II. DISCUSSION

Buyer contends that seller's broker's statement in the MLS regarding the Fault Hazard Investigation report is false or inaccurate because the statement fails to specify that the report dates to 1982, thereby giving a false impression that the report was current as of the date of the MLS listing and remained "valid" as a basis for commercially developing the property in 2006. He argues that the trial court erred in its application of the law to the facts by finding seller's broker not liable for damages under section 1088.

Buyer does not dispute the truth of seller's broker's statement in the MLS with respect to the existence of a Fault Hazard Investigation report regarding the property at issue. Nor does he challenge the accuracy of seller's broker's summary description of the

5

author's conclusions (though no specific declaration that the property is "buildable" is contained in the Fault Hazard Investigation report).

While real estate brokers owe their own clients fiduciary duties, they owe third parties who are not their clients, including the adverse party in a real estate transaction, only those duties imposed by regulatory statutes. (*Padgett v. Phariss* (1997) 54 Cal.App.4th 1270, 1279.) These duties include a general obligation of "'honesty, fairness and full disclosure toward all parties.'" (*Holmes v. Summer* (2010) 188 Cal.App.4th 1510, 1524 (*Holmes*) [quoting *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 43]; see also *Field v. Century 21 Klowden-Forness Realty* (1998) 63 Cal.App.4th 18, 24-27 (*Field*) [distinguishing duties owed by brokers to their clients from duties owed to nonclients].) A broker's duties with respect to any listing or other information posted to a MLS are specified in section 1088. Section 1088 states in relevant part that the broker "shall be responsible for the truth of all representations and statements made by the agent [in an MLS] . . . of which that agent . . . had knowledge or reasonably should have had knowledge," and provides a statutory negligence claim for "anyone injured" by the "falseness or inaccuracy" of such representations and statements. (§ 1088; *see Furla v. Jon Douglas Co.* (1998) 65 Cal.App.4th 1069, 1077 (*Furla*) [discussing § 1088].) Here, the dispositive facts are not challenged on appeal, and indeed were largely undisputed below, so we review de novo whether seller's broker's statement in the MLS was false or inaccurate in the meaning of section 1088. (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765 [a statute's interpretation and application to undisputed facts are questions of law reviewed de novo].)

6

There are two previous published appellate opinions that discuss section 1088. In *Furla*, *supra*, 65 Cal.App.4th at pp. 1077-1079, the appellate court reversed a grant of summary judgment to a defendant broker, finding triable issues of material fact regarding whether the broker's inaccurate representation regarding the square footage of a property should give rise to liability under section 1088, among other statutory provisions. In *Holmes, supra*, 188 Cal.App.4th at p. 1525, the appellate court noted, but did not resolve, the question of whether section 1088 is violated where a broker knows, but does not disclose in a listing, that the property is so overencumbered with debt that any attempted transaction at the listed price is unlikely to close. Neither *Furla* nor *Holmes* provides a dispositive answer to the question posed by this case.

Buyer correctly identifies seller's broker's statement in the MLS as a statement of fact, the truth of which is seller's broker's responsibility under section 1088. Buyer's claim against seller's broker fails, however, for the fundamental reason that he does not identify anything about seller's broker's statement itself that is false or inaccurate, as would be required for liability under section 1088. As noted, the existence of the Fault Hazard Investigation report is undisputed. Buyer has not argued that seller's broker's description of the conclusions of the report—that the property was "declared buildable by the investigating licensed geologist"—is an untrue or inaccurate summary of the report's conclusions. Furthermore, by disclosing a copy of the Fault Hazard Investigation report and associated approval letter during escrow, seller's broker fully satisfied his duty to buyer of "honesty, fairness and full disclosure toward all parties." (See *Holmes*, *supra*, 188 Cal.App.4th at p. 1524.)

7

Buyer contends only that the passage of time between 1982 and 2006 rendered the Fault Hazard Report unreliable and invalid, thus making seller's broker's statement in the MLS false or inaccurate. We disagree with buyer's conclusion. Certainly, the significance of the Fault Hazard Investigation report for purposes of acquiring approval from the County of Riverside to build a commercial development on the site changed between 1982 and 2006: as the trial court found, the report had become "outdated" for that purpose. Buyer's broker and buyer believed that the property was fully cleared for building, without any further scientific analysis or governmental approvals, at the time of the transaction in 2006. The property, as buyer discovered after closing, was not "buildable" in that sense. *But seller's broker never said that it was*.[3] Seller's broker wrote in the MLS that the "parcel . . . has been declared buildable by the investigating licensed geologist" and that the "[r]eport [is] available for serious buyers." Those statements were true, and he provided the report to buyer's broker. Whatever conceivably misleading characterization of the report may arguably be implied by the MLS statement, notification that the report itself was available for "serious buyers," and actually providing the report, cured any such mischaracterization.

---

[3] At trial, plaintiff's expert opined that seller's broker's statement meant that the property had been "declared buildable" and implied that a buyer could "take that to the bank." Even assuming this opinion regarding the meaning and implications of seller's broker's statement could properly be given any evidentiary weight, the opinion was rejected by the trier of fact; after a bench trial, the judge found seller's broker's expert "more believable." We will not disturb that determination here. (See *Cuiellette v. City of Los Angeles*, *supra*, 194 Cal.App.4th at p. 765.)

8

Furthermore, in the MLS statement the seller's broker did *not* affirm that the geologist performed his investigation in accord with current County of Riverside requirements, nor did he state that all necessary approvals for building had been obtained. A realtor is "responsible for the truth of all representations and statements" he or she posts in an MLS. (§ 1088.) There is nothing in section 1088, or any other source of law, imposing responsibility on a seller's broker to ensure that true statements in an MLS are not misconstrued, or to make certain that the buyer and the buyer's broker perform the appropriate due diligence to evaluate the significance of such true statements for the buyer's particular purposes.

To be sure, an omission of information may sometimes render an otherwise true statement false or inaccurate, in the meaning of section 1088. For example, in *Holmes* the Court of Appeal noted the possibility of a violation of section 1088 where the broker listing a property omitted the information that the transaction could only close at the listed price if lenders agreed to accept less money than the amounts owed by the seller or the seller had sufficient cash to deposit into escrow to cover the excess debt. (*Holmes*, *supra*, 188 Cal.App.4th at pp. 1522-1523, 1525.) In that case, however, there was something false about the broker's representation in the MLS, namely, the suggestion that the property could be bought at a particular price—it was highly unlikely the transaction could close at the listed price, even if buyer and seller wanted it to. (*Id.* at p. 1525.) Here, by contrast, nothing about the passage of time between 1982 and 2006 makes seller's broker's description of the report or the nature of the report's conclusions any less true; the omission of the report's publication date therefore does not render his statement

9

false or inaccurate. Again, we observe that any misleading effect the omission of the report's publication date conceivably had on a reader was corrected by offering to the reader who is a "serious buyer" a copy of the report itself, which displayed the date on its cover, and by actually providing the report to buyer.

Additionally, even if seller's broker's language could be construed to imply that the Fault Hazard Investigation report was recent and therefore could be relied on as a current geological evaluation of the property, there is nothing in the record that supports the conclusion buyer was injured by the alleged inaccuracy, as would be required for liability under section 1088. (See § 1088 [providing a claim to "anyone injured by [the] falseness or inaccuracy" of representations and statements in an MLS].) Buyer contends that the absence of the date of the report from the MLS listing rendered seller's broker's statement misleading. But the report itself was disclosed to buyer during escrow, prior to the close of the transaction. Buyer and buyer's broker need not have even read the report following its disclosure to learn that it was authored in 1982: as noted, the date appears prominently on the cover. Thus, to the extent seller's broker's statement could be considered false or inaccurate for failure to include the date of the report, that purported defect was cured prior to the time when buyer could have suffered any damage from the lack of such information. (Cf. *Holmes*, *supra*, 188 Cal.App.4th at p. 1519 [buyers sold their existing home to purchase seller's property, and were damaged when seller failed to convey title].) Buyer's alleged injury arises from a failure to investigate and understand the implications of the information that the Fault Hazard Investigation report dates to

10

1982—a failure the trial court found was buyer's broker's responsibility—not any failure to provide that information in a timely manner on the part of seller's broker. In short, we conclude that seller's broker's statement in the MLS was true and neither violated section 1088 nor caused buyer any damage.

Buyer's arguments on appeal generally suffer from a failure to engage with what seller's broker actually wrote in the MLS listing. If seller's broker had stated in the MLS listing that "the Property had been cleared to build upon by the County of Riverside," or had seller's broker "blindly assert[ed] the ability to build," as buyer would have it, seller's broker would be responsible for the truth of such statements. But that is not what the record shows seller's broker wrote in his posting on the MLS. Rather, as noted, seller's broker asserted the existence of a Fault Hazard Investigation report, summarized its conclusions, and offered to provide the report to serious buyers. Absent anything untrue or inaccurate about the statement seller's broker actually made in the MLS, and absent damage to buyer from such falsity or inaccuracy, seller's broker is not liable under section 1088.

Buyer further contends that "any reasonably competent realtor in Southern California" would be aware of the changes to the regulatory landscape that occurred after the 1994 Northridge earthquake, so seller's broker should have known that the 1982 Fault Hazard Investigation report was outdated. Seller's broker never affirmed, however, that the report was current to 2006 standards. He described the existence of a report, summarized its conclusions, and offered to provide the report to serious buyers; he is responsible for the truth of *that statement*. It was incumbent on buyer—and on buyer's

11

broker, in his role as a fiduciary for buyer—to determine whether the Fault Hazard Investigation report was something buyer should rely on for his particular purposes. Seller's broker had no obligation to perform that research for buyer and buyer's broker. (See, e.g., *Field*, *supra*, 63 Cal.App.4th at pp. 24-25 [stating that "a selling broker has no obligation to purchasers to investigate public records or permits pertaining to title or use of the property," but the buyer's broker "'is expected to perform the necessary research and investigation in order to know those important matters that will affect the principal's decision'"]; *Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 605 ["[i]t is not the obligation of the seller to research local land-use ordinances and advise a buyer as to their effect on the realty"], disapproved on another ground in *Santisas v. Goodin* (1998) 17 Cal.4th 599, 609, fn. 5.) To the extent seller's broker's statement in the MLS could be interpreted to imply that the report was recent and therefore likely to have been performed under current standards, that purported inaccuracy was cured by disclosing the report itself during escrow, prior to any possible injury to buyer from lack of information regarding the date of the report.

Buyer's reliance on authority regarding a broker's duty to verify the truth of his statements is similarly misplaced. Seller's broker is responsible under such authority for verifying the truth of what he wrote and posted to the MLS. (See, e.g., *Furla*, *supra*, 65 Cal.App.4th at p. 1081 [finding triable issue of fact regarding whether a broker's approximation of square footage of property constituted actionable misrepresentation of fact].) He performed that duty adequately by obtaining a copy of the Fault Hazard Investigation report and accurately describing its conclusions. Had seller's broker relied

12

solely on his client's description of a report seller's broker had never read, and that description turned out to be inaccurate in a material way, buyer's arguments in this regard would be more on point. But the record demonstrates that is not what happened here.

## III.  DISPOSITION

The trial court's judgment is affirmed.  Seller's broker's cross-appeal is dismissed as moot.  Seller's broker, Robert Schmeling, is awarded his costs on appeal.

CERTIFIED FOR PUBLICATION


HOLLENHORST
Acting P. J.

We concur:

RICHLI
J.

KING
J.