Filed 8/17/15

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| CHRISTOPHER J. WARNER, | |
| Plaintiff and Appellant, | E060337 |
| v. | (Super.Ct.No. CIVDS1300493) |
| CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. Brian M. Hoffstadt, Judge. Affirmed.

Shernoff Bidart Echeverria Bentley and Michael J. Bidart; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich, for Plaintiff and Appellant.

Gina M. Ratto and Renee Salazar for Defendant and Respondent.

This appeal turns on a matter of first impression, a question of statutory

interpretation regarding the Judges' Retirement System II Law (JRS II) (Gov. Code,[1]

---

[1] Further undesignated statutory references are to the Government Code.

1

§§ 75500 et seq.), which establishes the system providing retirement benefits to California judges first elected or appointed to judicial office on or after November 9, 1994. Plaintiff and appellant Christopher J. Warner (Judge Warner) contends that under JRS II he is entitled to receive both a disability retirement allowance and payment of the monetary credits he accrued during his service. Defendant and respondent California Public Employees' Retirement System (CalPERS), the agency that administers JRS II, ruled JRS II entitles Judge Warner only to the disability retirement allowance. The trial court denied Judge Warner's petition for writ of mandate, which sought to reverse the agency's ruling. We affirm.[2]

## I. FACTS AND PROCEDURAL BACKGROUND

Judge Warner served as a municipal and then superior court judge from July 1996 until his retirement in October 2010. In November 2010, he applied for a disability retirement benefit under JRS II. CalPERS granted his application, and he was awarded a monthly retirement allowance, paying him an amount equal to 65 percent of his retirement-level salary.

In May 2011, Judge Warner applied to CalPERS to receive a distribution of his monetary credits in the JRS II system, which totaled $572,407. CalPERS staff denied the request. Judge Warner appealed that decision to the CalPERS Board of Administration

---

[2] In the interest of giving credit where credit is due, it should be noted that our discussion below not only affirms the ruling of the trial court, but also adopts or adapts large portions of the excellent analysis of the trial court judge, the Honorable Brian M. Hoffstadt. In 2014 Judge Hoffstadt was appointed and confirmed as Associate Justice for the Second District, Division Two Court of Appeal.

(Board).  After a hearing, the administrative law judge (ALJ) issued a proposed decision recommending the staff decision be affirmed.  The Board adopted the ALJ's recommendation.

In January 2013, Judge Warner filed a petition for writ of mandate in San Bernardino County Superior Court challenging the Board's decision.  The Judicial Council assigned the case to Los Angeles County Superior Court.  On November 13, 2013, the court issued an order denying the petition.

## II.  DISCUSSION

### A.  Standard of Review

There are no disputed facts at issue.  We review the trial court's ruling interpreting the relevant statutes and applying them to the undisputed facts de novo.  (*Saffie v. Schmeling* (2014) 224 Cal.App.4th 563, 569 [Fourth Dist., Div. Two], citing *Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765.)  "The ultimate interpretation of a statute is of course an exercise of judicial power and it is the responsibility of the courts to declare its true meaning even if it requires rejection of an earlier erroneous administrative interpretation."  (*Crumpler v. Board of Administration* (1973) 32 Cal.App.3d 567, 578 [Fourth Dist., Div. Two].)  While the "'agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts,'" we must nevertheless "'independently judge the text of [a] statute . . . .'"  (*Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1264.)

**B.  Analysis**

*1.  Overview of JRS II.*

JRS II governs the retirement system for judicial officers at all levels of California state court who were elected or appointed to judicial office on or after November 9, 1994. (§ 75502, subd. (a).)  It provides for three types of retirement benefits—normal, early, and disability.  (§§ 75522, 75521, 75560.1.)  All retirement allowances are paid from a trust fund, known as the Judges' Retirement System II Fund (JRS II fund), held in the State Treasury, which receives all contributions to the JRS II system from judges and the state.  (§ 75600.)

A judge who has either served 20 years and reached age 65, or served five years and reached age 70, is eligible for normal retirement.  (§ 75522, subd. (a).)  Upon retirement, a judge must "elect" to receive either (1) a "monthly retirement allowance"—essentially, an annuity paying an amount determined by multiplying the judge's final salary, years of service, and a statutory "benefit factor"—which is capped at 75 percent of the judge's final compensation, or (2) a lump sum equal to the judge's accumulated "monetary credits"—an amount equal to 18 percent of the judge's monthly salary for every month of the judge's service, plus the JRS II fund's net earnings on that amount—payable either in a single payment or in installments over time, at the judge's election. (§ 75522, subds. (d), (e); § 75520.)  The 18 percent lump sum represents a portion of amounts contributed to the JRS II fund during the judge's period of service by the judge and the state; judges contribute eight percent of their monthly salary, while the state

4

contributes an amount that is adjusted yearly from an initial contribution rate of 18.8 percent. (§§ 75502, subd. (f), 75601, 75602, 75520, 75600, 75600.5.)

If a judge leaves service but does not qualify for normal retirement, he or she is eligible for an early retirement benefit. (§ 75521.) A judge who leaves service before accruing five years of service may receive a refund of his or her eight percent monthly contributions into the JRS II fund plus interest. (§§ 75521, subd. (a); 75502, subd. (f).) If five or more years of service have been accrued, the judge may receive a distribution of his or her "monetary credits"—as noted above, an amount equal to 18 percent of the judge's monthly salary for every month of service. (§§ 75521, subds. (a), (b), 75520.) Importantly, given the issues in this case, section 75521 provides that the judge leaving service and receiving an early retirement benefit is to receive the specified payment "and no other amount." (§ 75521, subds. (a), (b).)

A judge who becomes disabled as a result of an injury or disease "arising out of and in the course of judicial service," or a judge who becomes disabled for any reason who has accrued five or more years of judicial service, may, "with his or her consent," apply for a disability retirement benefit. (§§ 75560.1, subd. (a), 75560.) The disability retirement benefit is a monthly allowance—like the normal retirement benefit, essentially an annuity—tied to a percentage of the judge's final salary and capped at 65 percent. (§ 75560.4.) Unlike the early retirement benefit, the disability retirement benefit comes with certain restrictions on the judge's postretirement employment that remain in effect until the judge reaches the age he or she would have been eligible for normal retirement. (§ 75580.)

5

*2. Under JRS II, a Judge Who Receives a Disability Retirement Benefit Is Not Entitled to Also Receive an Early Retirement Benefit.*

Judge Warner contends that a judge who becomes disabled may first apply for and obtain a disability retirement benefit, and then still proceed to receive the retirement benefit appropriate to his or her years of service (in his case, the early retirement benefit of a lump sum payment of monetary credits pursuant to section 75521, subdivision (b).) This contention is based in part on the circumstance that provisions regarding disability benefits are codified in Article 4 of the JRS II law, while service retirement provisions, including both normal and early retirement, are codified in Article 2. (§§ 75522, 75521, 75560.1.)

We cannot say Judge Warner's interpretation is explicitly foreclosed by the relevant statutory language, which ideally would have been drafted with greater precision. Nevertheless, we conclude the interpretation that fits most comfortably with the statutory scheme as whole, as well as its purpose, legislative history, and public policy, is that a judge who becomes disabled is not entitled to receive both disability and service retirement benefits under JSP II, but only one or the other.

First, the statute that provides the early retirement benefit expressly states that the retiring judge is to receive the specified lump sum "and no other amount." (§§ 75521, subds. (a), (b).) Judge Warner's position, whereby a retired judge might receive both an

6

early retirement benefit *and* a disability retirement allowance, is at least in some tension with this language.**3**

Second, the structure of JRS II benefits generally suggests that retiring judges are to receive *either* a monthly retirement allowance or a lump sum payment, but not both. (See *State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [statutes are interpreted "'""with reference to the entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness'""'].) Judges qualified for normal retirement must "elect" between retirement allowance and lump sum payment of monetary credits. (§ 75522, subd. (c).) Judges who leave service before becoming eligible for normal retirement may receive an early retirement benefit of a lump sum payment, "and no other amount." (§ 75521, subds. (a), (b).) Judges who qualify for disability retirement may receive a monthly allowance, despite having not reached normal retirement eligibility, but there is no explicit provision allowing such judges also to receive a lump sum payment of contributions or monetary credits. (§ 75560.1.) The absence of any contrary example—any situation where a judge is explicitly entitled to collect two retirement benefits under JSP II—weighs in favor of CalPERS's interpretation.

---

**3** We acknowledge Judge Warner's argument that this language could, in isolation, be interpreted to impose restrictions only on any further *service* benefits under Article 2 of the JRS II law, but to place no restriction on award of a disability retirement allowance under Article 4. We do not, however, accept that argument, for the reasons discussed below.

Third, the legislative history of JRS II provides no support for Judge Warner's interpretation, and indeed strongly weighs against it. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [where plain meaning is insufficient to resolve a question of statutory interpretation, "we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history"].) JRS II was enacted to "[p]rovide a new, lower tier of benefits for judges" because the prior system was "[a]ctuarially unsound from its inception." (Conf. Com., Rep. on Sen. Bill No. 65 (1993-1994 Reg. Sess.) Aug. 25, 1994, p. 1.) An interpretation that allowed judges to receive two retirement benefits—not only a monthly allowance, but also payment of a large portion of the sums contributed to the retirement fund by the judge and the state during his or her service—would hardly further the ostensible goal of creating a new, actuarially sound retirement system.[4] Further, the legislative history includes repeated observations that payment of the lump sum early retirement benefit "fully discharges the retirement system's obligation to the former judge." (*Id*. at p. 5; see also Select Committee on Judicial Retirement, Final Report, May 1993, p. 14; CalPERS memorandum to Members of the Board of Administration dated Aug. 31, 1994, attached LGSD Bill Analysis, pp. 2-3.) A chart

_____

[4] To be sure, as a logical exercise, it is possible to imagine a system designed to subsidize judges who become disabled, providing not only a retirement allowance but also return of the disabled judges' contributions or monetary credits, which nevertheless was actuarially sound. Such a system would simply require commensurately higher contributions from and/or lower benefits for those judges who do not become disabled, so that the fund remained solvent. If such a system for the benefit of disabled judges was intended by the Legislature, however, one would expect to find something in the legislative history explicitly discussing that decision, and justifying it both as a matter of policy and in terms of actuarial analysis. In the legislative history of JRS II, there is nothing of the sort.

8

prepared for the Senate committee considering the JRS II legislation, comparing the benefits provided under JRS II with those of its predecessor system, indicates explicitly that a judge receiving a disability retirement allowance under JRS II would not also receive any lump sum payment of contributions or monetary credits (described as a "defined contribution benefit"), stating "[d]efined contribution benefit not paid at disability." (California Judges' Retirement System Benefit Illustrations and Cost Data prepared for Sen. Bill 65 Conference Committee, Aug. 25, 1994.) At another point in the legislative history, it is observed that "[i]f the judge retires on disability, he or she forfeits all rights to the [defined contribution]-like account balance." (Select Committee on Judicial Retirement, Final Report, May 1993, Report Addendum, p. 3.) It is difficult, if not impossible, to reconcile these aspects of the legislative history with Judge Warner's interpretation of JRS II.

Finally, Judge Warner's interpretation falters on the principle that we must avoid statutory interpretations that lead to unreasonable results. (*Dreyer's Grand Ice Cream, Inc. v. County of Alameda* (1986) 178 Cal.App.3d 1174, 1181-1182.) Under his interpretation, judges who are eligible for disability are entitled to two retirement benefits, even though they have funded through their contributions only a portion of one. (§§ 75502, subd. (f), 75601, 75602.) We find it unreasonable to single out a subset of judges for such preferential treatment, at least in the absence of any unambiguous indication in the statutory language or the legislative history that such a result was intended.

In support of his interpretation, Judge Warner emphasizes that JRS II does not specifically require judges to "elect" between an early retirement benefit and a disability retirement benefit. But a judge who becomes disabled and leaves service does not automatically receive a disability retirement benefit; he or she must "consent" to disability retirement. (§ 75560.1, subd. (a).) In the context of JRS II as a whole and the legislative history, discussed above, the judge's "consent" to disability retirement is most reasonably understood to serve as an election between the early retirement benefit and the disability retirement benefit.

Judge Warner also points to JRS II's treatment of judges convicted of certain crimes, noting that such judges are entitled to a refund of their contributions to the system, but otherwise "shall not receive any benefits from the system." (§ 75526.) He observes that such judges are eligible nevertheless to apply for and receive a disability retirement benefit, albeit under a higher standard of proof. (§ 75562.) He concludes from this circumstance that language in Article 2 of the JRS II law limiting further payments, such as the "and no other amount" clause in section 75521 regarding the early retirement benefit, applies only within Article 2, and does not preclude the judge from also receiving a disability retirement benefit under Article 4.

We disagree that Judge Warner's conclusion follows from his premises. At most, it is appropriate to conclude that a conviction does not cut a judge off completely from possible eligibility for a disability retirement benefit, not that a judge may collect both disability retirement and early retirement benefits. Indeed, Judge Warren's argument accidently highlights the unreasonableness of his interpretation of JRS II. It is

10

implausible that the Legislature intended judges convicted of felonies to have the opportunity to collect two retirement benefits, if they should happen to become disabled—both a disability retirement allowance and a return of their monthly contributions to the JRS II fund—while judges who retire normally, after careers unmarred by any criminal conviction, may receive only a monthly retirement allowance *or* a lump sum payment of their monetary credits.

Judge Warner further urges us to apply the rule that ambiguities in pension statutes should be construed in favor of the pensioner, citing *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 490.) That rule only applies, however, where the construction urged by the pensioner is "consistent with the clear language and purpose of the statute." (*Ibid.*) For the reasons discussed above, Judge Warner's interpretation of JRS II is not.

Additionally, Judge Warner invokes the maxim that the "'law abhors forfeitures.'" (See *Wooster v. Department of Fish & Game* (2012) 211 Cal.App.4th 1020, 1027) Indeed, as noted, the legislative history includes at least one use of the word "forfeit" in describing a judge's decision to take disability retirement and thereby relinquish his or her entitlement to payment of his or her contributions or monetary credits. (Select Committee on Judicial Retirement, Final Report, May 1993, Report Addendum, p. 3.) And CalPERS described Judge Warner as "forfeiting" his right to receive a distribution of monetary credits, upon applying for and receiving the disability retirement benefit, in the letter sent to Judge Warner informing him that he is not entitled to both a disability retirement allowance and payment of his accrued monetary credits. In both cases,

11

however, the term is used in its general meaning, to give up or relinquish, not as the legal term of art utilized in the cited maxim. In *Kuhlemeier v. Lack* (1942) 50 Cal.App.2d 802, the court of appeal observed that "[i]n law the word 'forfeit' means 'to lose and surrender to an individual or the state something that belongs to one *for misconduct or breach of duty* . . . .'" and found no forfeiture, in the legal sense, despite parties' use of the term in a lease. (*Id.* at p. 808.) In that case, "the payment of money, or the relinquishment of the right to demand the return of money, constitute[d] the consideration for the option to terminate the lease." (*Ibid.*) Here, too, Judge Warner relinquished the right to distribution of his monetary credits, when he consented to receive a disability retirement allowance. But it does not follow that there was ever a forfeiture of the sort the law abhors. In fact, the money continues to inure to his benefit, as part of the JRS II fund from which his disability retirement allowance is paid. (§ 75600.)

In short, we agree wholeheartedly with the trial court's conclusion: "Judge Warner has served the State with distinction as a bench officer, and his disability prior to full retirement age deprived the People of San Bernardino County of an able judge. As currently written, however, the JRS II statutes require that Judge Warner be awarded a disability retirement annuity benefit and no other retirement benefit."

12

## III.  DISPOSITION

The trial court's order denying Judge Warner's petition for writ of mandate is affirmed.  CalPERS shall recover its costs on appeal.

CERTIFIED FOR PUBLICATION


                                                                   HOLLENHORST
                                                                      Acting P. J.

We concur:

MCKINSTER
                      J.

MILLER
                      J.