Filed 7/10/25  Hiramoto v. MacMaster CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JONI T. HIRAMOTO,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DOUGLASS C. MACMASTER<br><br>    Defendant and Appellant. | H051793<br>(Alameda County<br> Super. Ct. No. D0404880) |

Respondent Joni T. Hiramoto and appellant Douglass MacMaster were married in 1989 and separated in 2004.  During their marriage, Hiramoto was appointed to the Contra Costa County Superior Court and became a member of the Judicial Retirement System II (JRS II).  (Gov. Code, § 75500 et seq.)[1]  On December 8, 2005, a status-only judgment of dissolution was filed that included an order reserving jurisdiction over the division of the parties' community property interest in the JRS II retirement plan.

Fourteen years later, on December 12, 2019, Hiramoto filed a request for a domestic relations order dividing the community property interest in the JRS II retirement plan.  The request included a proposed order that divided the community interest as follows pursuant to section 75551:  (1) 50 percent of the monetary credits attributed to Hiramoto's service from the date of marriage to the date of separation would be awarded to MacMaster as the nonmember; (2) the JRS II administrator would pay MacMaster the

_____

[1] All further statutory references are to the Government Code unless otherwise indicated.

amount of monetary credits allocated to him after receiving an acceptable court order; (3) MacMaster would have no further interest in the JRS II fund; and (4) the trial court reserved jurisdiction to modify the order for the purpose of implementation.

The trial court granted Hiramoto's request and a domestic relations order dividing the community property interest in the JRS II retirement benefits was filed on November 18, 2020. The judgment on reserved issues, also filed on November 18, 2020, awarded MacMaster 50 percent of the monetary credits attributed to Hiramoto's service in the JRS II system during the period from the July 1, 1989 date of marriage to the October 4, 2004 date of separation, in accordance with section 75551, subdivision (a) and Family Code section 2610.

On appeal, MacMaster contends that the trial court erred and the judgment should be reversed because (1) he is not a nonmember subject to JRS II because he did not petition the court for division of the community property interest in Hiramoto's JRS II plan; (2) he did not consent to the division of the parties' community property interest into separate accounts as required by Family Code section 2610, subdivision (a); (3) an equal division of his community property interest in the JRS II plan under Family Code section 2610, subdivision (a) requires that he receive the present value of Hiramoto's "matured pension benefits;" and (4) Hiramoto violated her spousal fiduciary duty with respect to the division of community property.

For the reasons stated below, we are not convinced by MacMaster's contentions on appeal and we will affirm the judgment.[2]

## I. THE JUDICIAL RETIREMENT SYSTEM

### A. *JRS I*

The Judges Retirement Law (JRS I) was enacted in 1978 and became effective on July 1, 1979. (§ 75005; *In re Marriage of Alarcon* (1983) 149 Cal. App.3d 544, 551.)

---

[2] The California Supreme Court ordered transfer of this appeal from the Court of Appeal, First Appellate District to this Court.

The JRS I plan is administered by the Board of Administration of the Public Employees' Retirement System (CalPERS). (*Ibid.*)

JRS I provides for the division of a community property interest in the plan. "[I]f the court divides the community property pursuant to [former Civil Code section 4800.8, subdivision (c), now Family Code section 2610],[3] it 'shall order that the accumulated contributions and service credit attributable to periods of service during the marriage be divided into two separate and distinct accounts in the name of the member and nonmember, respectively. (Gov. Code, § 75050, subd. (b).) Upon being awarded a separate account, the nonmember may choose a refund of accumulated contributions or a retirement allowance based on service years which the judge accrued during marriage and in keeping with the community property settlement. (Gov. Code, §§ 75052, 75058.)" (*In re Marriage of Colvin* (1992) 2 Cal.App.4th 1570, 1577 (*Colvin*), fn. omitted.)

JRS I defines "nonmember" as follows: " 'Nonmember,' as used in this article, means the spouse or former spouse of a member, who as a result of petitioning the court for the division of community property, has been awarded a distinct and separate account reflecting specific credited service and accumulated contributions." (§ 75051.)

The section 75051 definition of "nonmember" in JRS I has been construed to mean that it is "the spouse or former spouse, not the judge or retired judge, who must petition the court for a separation of accounts. . . . The obvious import of this language is that it is the spouse's or former spouse's choice whether or not to seek a separation of

_____

[3] Family Code section 2610, subdivision (a)(3)(D) provides: "Except as provided in subdivision (b), the court shall make whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, including all survivor and death benefits, including, but not limited to, any of the following: [¶] Upon the agreement of the nonemployee spouse, order the division of accumulated community property contributions and service credit as provided in the following or similar enactments: [¶] Article 2.5 (commencing with Section 75050) of Chapter 11 of Title 8 of the Government Code [JRS I]".

accounts and the attendant rights flowing therefrom.  This makes sense because there are advantages and disadvantages to proceeding with this method which the nonmember would have to evaluate." (*Colvin*, *supra*, 2 Cal.App.4th at p. 1579.)  Further, "[t]he very wording of this statute implies that some former spouses will seek their own account and retirement allowance or lump sum payment under the [JRL I] amendments, while others will seek another type of division." (*Id*. at p. 1580.)

Thus, it has been held that under JRS I, the trial court has the "discretion to tailor division of a judge's pension plan according to the circumstances of a given case." (*Colvin*, *supra*, 2 Cal.App.4th at p. 1580.)

### B.  *JRS II*

The Judges' Retirement System II Law, which applies to Hiramoto's judicial service, was enacted in 1994 to establish a new system providing retirement benefits to California judges first elected or appointed to judicial office on or after November 9, 1994.  (§ 75500 et seq.; *Warner v. Public Employees' Retirement Sys*tem (2015) 239 Cal.App.4th 659, 663 (*Warner*).)  "[U]nder this more recently enacted retirement system, known as JRS II, judges receive significantly reduced retirement benefits than were provided under JRS I.  [Citation.]" (*McGlynn v. State of California* (2018) 21 Cal.App.5th 548, 553-554.)  The legislature enacted JRS II to "[p]rovide a new, lower tier of benefits for judges' because the prior system was '[a]ctuarially unsound from its inception.' (Conf. Com., Rep. on Sen. Bill No. 65 (1993-1994 Reg. Sess.) Aug. 25, 1994, p. 1.)" (*Warner*, *supra*, at p. 667.)

Similar to the definition of "nonmember" in JRS I, "nonmember" is defined in JRS II as follows:  "In this article, unless the context indicates otherwise:  [¶] . . . [¶] 'Nonmember' means the spouse or former spouse of a member, who as a result of petitioning the court for the division of community property has been awarded a distinct and separate account reflecting specific monetary credits, specific credited service, and accumulated contributions." (§ 75550, subd. (b).)

4

However, JRS II substantially revised the provisions governing the division of a community property interest in the plan's retirement benefits. The JRS II procedures for dividing a community property interest begins with section 75551, subdivisions (a)(1) and (a)(2), which provide, as relevant here: "If a member's marriage is dissolved or a member and his or her spouse are legally separated while the member is an active judge, the court shall make the following determinations: [¶] The number of years of service that accrued during the marriage of the member and nonmember, down to the date of their separation. [¶] The date of the parties' separation."

Next, section 75551, subdivision (a)(4) provides: "If a member's marriage is dissolved or a member and his or her spouse are legally separated while the member is an active judge, the court shall make the following determinations: [¶] If the member had been a judge for five years or more on the date of separation, the court shall determine the member's and nonmember's shares of the judge's monetary credits that have accrued pursuant to Section 75520, based on Section 2610 of the Family Code, and on the law generally applicable to property earned during marriage. The monetary credits include the credits computed pursuant to subdivision (b) of Section 75520 computed to the date the court finds appropriate."

Under section 75520, subdivisions (a) and (b), monetary credits are computed as follows: "A judge shall, monthly, accrue monetary credits equal to 18 percent of the judge's monthly salary. [¶] To the total monetary credits in each judge's account, an additional amount shall be credited monthly at a rate, not less than zero, equal to the annual net earnings rate achieved by the Judges' Retirement System II Fund on its investments of moneys in the Judges' Retirement System II Fund during the preceding fiscal year."

Section 75551, subdivision (b) then provides that the determinations made regarding the member's and nonmember's shares of a judge's monetary credits "shall be included in the judgment of dissolution or separation. The system shall deem any portion

5

of the judge's contributions or of the judge's monetary credits that were not allocated by the judgment to the nonmember, to be allocated to the member."

Section 75551 also specifies that "[p]romptly after receiving a certified copy of a judgment dissolving the marriage of a member or legally separating a member and nonmember and allocating shares of the member's contributions pursuant to [section 75551, subdivision (a)(4)], the fund shall pay to the nonmember the amount allocated to him or her in the judgment. The nonmember shall have no further interest in the fund." (§ 75551, subd. (d).)

Finally, JRS II provides for redeposit of the member's share of the monetary credits after payment of the nonmember's share: "The amount of the payment pursuant to subdivision (c) or (d) shall be subtracted from the member's monetary credits as computed pursuant to Section 75520. Until the amount is redeposited pursuant to Section 75552, the additional credits accorded pursuant to subdivision (b) of Section 75520 shall be computed on the amount so reduced. (§ 75551, subd. (e).)

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Dissolution Proceedings*

Hiramoto and MacMaster were married on July 1, 1989. In 1998 Hiramoto was appointed to the Contra Costa County Superior Court and became a member of JRS II. The parties entered into a marital settlement agreement in September 2004 that included, among other things, an agreement that the community property interests in their existing retirement accounts would be divided upon the dissolution of their marriage.

In October 2004 Hiramoto filed a petition for dissolution of marriage that stated October 4, 2004, was date of separation and property rights were to be determined. MacMaster filed a response and request for dissolution of marriage that also stated that property rights, including community property rights, were to be determined.

In November 2004 MacMaster filed a motion for a status-only dissolution. Hiramoto opposed the motion unless the parties' pension and employee benefit plans,

6

including the JRS II plan, were divided concurrently with the termination of marital status.  In October 2005 Hiramoto consented to MacMaster's motion for joinder of several retirement accounts and savings plans, including "CalPERS JRS II."  In November 2005 MacMaster filed a request for joinder of JRS II, which filed a notice of appearance in the parties' dissolution proceeding in December 2005.

Subsequently, in the December 8, 2005 order permitting bifurcation of marital status the trial court reserved jurisdiction to order equal division of the parties' community interest in their retirement plans, including JRS II.[4]  Also on December 8, 2005, a status-only judgment of dissolution was filed that incorporated the order permitting bifurcation, including the order reserving jurisdiction over the JRS II plan.

**B.  *Dispute Regarding the Division of Community Interest in the JRS II Plan***

Fourteen years later, on December 12, 2019, Hiramoto filed a request for a domestic relations order dividing the community property interest in the JRS II retirement plan.  The request included a proposed order that divided the community interest as follows pursuant to section 75551:  (1) 50 percent of the monetary credits attributed to Hiramoto's service from the date of marriage to the date of separation would be awarded to MacMaster as the nonmember; (2) the JRS II administrator would pay MacMaster the amount of monetary credits allocated to him after receiving an acceptable court order; (3) MacMaster would have no further interest in the JRS II fund; and (4) the trial court reserved jurisdiction to modify the order for the purpose of implementation.

Hiramoto's request was supported by an October 15, 2019 letter from a JRS II program analyst stating that the proposed order was acceptable to JRS II.  A second letter from a JRS II program analyst, also dated October 15, 2019, stated that MacMaster's share of the monetary credits and accumulated interest as of the date of separation,

---

[4] The December 8, 2004 order included an order dividing the parties' interest in the Contra Costa County Employees Retirement Association plan.

October 4, 2004, was approximately $87,682.03, and as of September 30, 2019, the amount of MacMaster's share was $310,503.95.

The parties each filed a memorandum of points and authorities regarding Hiramoto's proposed order to divide the community interest in the JRS II plan. In her memorandum of points and authorities Hiramoto pointed out that the parties' community interests in their other retirement plans were divided long ago, leaving only the community interest in the JRS II plan to be divided. Hiramoto asserted that the proposed order properly divided the community interest in the JRS II plan pursuant to section 75551 and was pre-approved by JRS II.

MacMaster opposed Hiramoto's request to divide the community interest in the JRS II plan on the grounds that a cash-out of his share of the community interest was improper because (1) he had not petitioned the court for division of the community interest and therefore he did not qualify as a nonmember former spouse under section 75550, subdivision (b); (2) since he was not a nonmember and had not consented to a cash-out, he was entitled to "an annuitized income stream based upon 26% of Judge Hiramoto's annual salary plus earnings" when she retires; (3) Family Code section 2610, subdivision (a) requires an equal division of the community property interest in retirement plans, which includes his future interest in the JRS II plan; (4) Hiramoto failed to present any evidence to show that the value of the proposed cash-out of his interest in JRS II is equal to the present value of his interest; (5) the proposed cash-out deprives him of his share of the community interest in enhanced benefits, including the statutory guarantee against negative returns; and (6) the court should retain jurisdiction to divide the community interest in the JRS II plan when Hiramoto's maximum benefits vest at age 65.

Prior to the hearing on Hiramoto's request for a division of the parties' community property interest in her JRS II plan, MacMaster submitted a letter from a JRS II program analyst dated March 20, 2020, responding to MacMaster's request for information. In

8

addition to providing MacMaster with documentation of Hiramoto's JRS II account, the letter stated that JRS II did not divide benefits based on a present value calculation. Regarding the benefits owed to MacMaster, the letter stated: "If the JRS II is provided with an acceptable filed Domestic Relations Order and you receive a payment in April 2020 your share of the monetary credits with interest through March 31, 2020, would be approximately $320,805.28." The letter also stated: "A separate account for your community property interest will be created for you when JRS II has received an acceptable filed Domestic Relations Order awarding you an interest in Judge Hiramoto's JRS II account. Once a separate account is established, you shall be paid a lump sum payment of the monetary credits pursuant to Government Code Section 75551 (d)."

### C. *Trial Court Statement of Decision and Judgment*

After holding a hearing, the trial court issued a tentative statement of decision on October 13, 2020.[5] The court ruled that Hiramoto's proposed order was consistent with the division of the parties' community property interest in the JRS II plan under section 75551, noting that JRS II had approved the proposed order.

In so ruling, the trial court rejected MacMaster's contention that he was not a nonmember as defined in section 75550, subdivision (b) because he had not petitioned the court for a separate judicial retirement account. The court determined that MacMaster was a nonmember under section 75550, subdivision (b) because he had petitioned the court for division of community property when he filed a response to Hiramoto's petition for dissolution in which he asked for a determination of community property rights. The trial court also rejected MacMaster's contention that under Family Code section 2610, subdivision (a)(3) his agreement to the proposed division of the community property interest in the JRS II plan was required.

---

[5] The matter was assigned to the Alameda County Superior Court after the Contra Costa County Superior Court recused its entire bench upon MacMaster's motion for disqualification.

9

For those reasons, the trial court granted Hiramoto's request for a domestic relations order dividing the community property interest in the JRS II retirement plan. No party objected to the tentative statement of decision. A domestic relations order dividing the community interest in the JRS II retirement benefits as requested by Hiramoto was filed on November 18, 2020. The judgment on reserved issues, also filed on November 18, 2020, awards MacMaster 50 percent of the monetary credits attributed to Hiramoto's service in the JRS II system during the period from the July 1, 1989 date of marriage to the October 4, 2004 date of separation, in accordance with section 75551, subdivision (a) and Family Code section 2610.

### III. DISCUSSION

On appeal, we understand MacMaster to contend that the trial court erred because (1) he is not a nonmember under JRS II because he did not petition the court for division of the community property interest in Hiramoto's JRS II plan; (2) he did not consent to the division of the parties' community property interest into separate accounts as required by Family Code section 2610, subdivision (a); (3) an equal division of his community property interest in the JRS II plan under Family Code section 2610, subdivision (a) requires that he receive the present value of Hiramoto's "matured pension benefits."[6]

We will begin our analysis with the applicable standard of review.

### A. *Standard of Review*

In general, the standard of review that applies to the trial court's division of community property is abuse of discretion. (*In re Marriage of Schleich* (2017) 8 Cal.App.5th 267, 276.) However, where the facts are undisputed and the issues on

---

[6] MacMaster's motion for judicial notice of various documents not specific to Hiramoto's JRS II account, including documents he received from JRS II pursuant to a documents request, is denied as irrelevant. (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 ["any matter to be judicially noticed must be relevant to a material issue"].)

appeal present questions of statutory interpretation, as in the present case, the standard of review is de novo.  (*Ibid*.)

### B.  *Nonmember Under JRS II*

#### 1.  **The Parties' Contentions**

We understand MacMaster to contend that he is not a nonmember as defined by JRS II, section 75550, subdivision (b), and therefore the provisions of JRS II governing the division of a community property interest do not apply to him.  Instead, MacMaster claims that under Family Code section 2610, subdivision (a), he is entitled to an award of his community property interest that would be based on the present value of Hiramoto's potential maximum JRS II retirement benefit, which he believes would be higher than the lump sum awarded under the trial court's order.

Hiramoto responds that MacMaster is a nonmember within the meaning of section 75550, subdivision (b), because he petitioned the court for division of the community property interest in her JRS II plan when he sought joinder of JRS II in his request for an order determining the nonemployee's benefits under the plan.  Hiramoto also argues that JRS II provides only for "an immediate lump-sum payment under the monetary credits formula when an active judge divorces.  There is no room in the JRS II law for a deferred benefit for an ex-spouse . . . ."

#### 2.  **Analysis**

We resolve the issue of whether MacMasters is a nonmember within the meaning of the JRS II provisions governing the division of a community property interest in a JRS II plan by applying the rules of statutory interpretation.

" '[C]onstruction of a statute and its applicability to a given situation are matters of law to be determined by the court.' [Citations.]" (*In re Marriage of Thornton* (2002) 95 Cal.App.4th 251, 253-254.)  " ' "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose." [Citation.] "We first consider the words of the statutes, as statutory language is generally the most reliable

indicator of legislation's intended purpose." [Citation.] "We consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme." [Citation.] If the relevant statutory language permits more than one reasonable interpretation, we look to appropriate extrinsic sources, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Cox v. City of Oakland* (2025) 17 Cal.5th 362, 373.)

Further, " ' "[i]f possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." [Citation.] "[A] construction making some words surplusage is to be avoided." [Citation.]' [Citation.]" (*Woosley v. State of California* (1992) 3 Cal.4th 758, 775-776 (*Woosley*).) Our Supreme Court has also instructed that " 'a statute should be interpreted " 'with reference to the whole system of law of which it is a part so that all may be harmonized and have effect,' " ' [citation]." (*Naranjo v. Spectrum Security Services Inc.* (2024) 15 Cal.5th 1056, 1080 (*Naranjo*).)

The statutory language at issue in the present case is the definition of "nonmember" in JRS II, which states: "In this article, unless the context indicates otherwise: [¶] . . . [¶] 'Nonmember' means the spouse or former spouse of a member, who as a result of petitioning the court for the division of community property has been awarded a distinct and separate account reflecting specific monetary credits, specific credited service, and accumulated contributions." (§ 75550, subd. (b).)

The phrase "unless the context indicates otherwise" guides our construction of the definition of "nonmember" in JRS II. (§ 75550, subd. (b).) The relevant context includes the provisions of JRS II that govern the division of a community property interest. These provisions begin with section 75551, which directs the court to (1) compute the member's and nonmember's shares of the monetary credits accrued during the marriage (§ 75551, subd. (a)); and (2) allocate the member's and nonmember's shares of the monetary credits in the judgment of dissolution or legal separation (§ 75551, subd. (b)). JRS II must make

prompt payment of the amount allocated to the nonmember by the judgment (§ 75551, subd. (d)). Section 75551, subdivision (d) also expressly provides that after the postjudgment payment, "[t]he nonmember shall have no further interest in the fund."

Significantly, these provisions do not include as a prerequisite to the division of a community property interest in a JRS II plan that a spouse or former spouse petition the court for the division of community property in order to become a nonmember. We are mindful that " 'a statute should be interpreted " 'with reference to the whole system of law of which it is a part so that all may be harmonized and have effect,' " ' [citation.]" (*Naranjo*, *supra*, 15 Cal.5th at p. 1080.) Here, the provisions of section 75551 governing the division of a community property interest between a JRS II member and a nonmember would be of no effect if "nonmember" is defined only as a spouse or former spouse who has already been awarded "a distinct and separate account reflecting specific monetary credits, specific credited service, and accumulated contributions." (§ 75550, subd. (b).)

Moreover, we must "choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) To construe the section 75550, subdivision (b) definition of "nonmember" to allow the spouse or former spouse to delay the division of the community property interest in a JRS II plan until years after the judgment of dissolution, by failing to petition the court for the division of community property, would be contrary to the Legislature's express intent that the nonmember be promptly paid the amount allocated to him or her by the judgment and thereafter have no interest in the JRS II plan. (§ 75551, subd. (d).)

Additionally, construing the section 75551, subdivision (b) definition of "nonmember" to allow a postjudgment delay in the division of the community property interest in a JRS II plan until the spouse or former spouse files a petition for division of

13

community property has the potential to defeat the Legislature's purpose in enacting JRS II. As we have noted, the Legislature enacted JRS II to reduce the amount of retirement benefits paid to judges, and consequently reduce the community property share paid spouses and former spouses, because the JRS I plan was "actuarily unsound." (*Warner*, *supra*, 239 Cal.App.4th at p. 667.)

The present case demonstrates that construing the definition of "nonmember" to allow a postjudgment delay in the division of the community property interest in a JRS II plan until such time as the spouse or former spouse decides to petition the court for division of community property may increase the amount of the community property share. Under section 75520, subdivisions (a) and (b), the computation of monetary credits includes the addition of interest in the form of the net earnings rate on the JRS II fund. The record reflects that JRS II program analysts calculated that MacMaster's community property share of Hiramoto's JRS II retirement plan increased in value from $87,682.03 as of the date of separation, October 4, 2004, to $320,805.28 as of March 31, 2020. This result is obviously contrary to the Legislature's intention in enacting JRS II to reduce the amount of retirement benefits owed by the judicial retirement system.

We also give great weight to the JRS II program analyst's approval of the proposed order in this case, which the trial court adopted, as well as the program analyst's advice that JRS II does not calculate future interest in dividing the community property interest in JRS II benefits. When an agency construes a controlling statute, " '[t]he appropriate mode of review in such a case is one in which the judiciary, although taking ultimate responsibility for the construction of the statute, accords great weight and respect to the administrative construction. [Citation.] [Citations].' " (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12.) Thus, it has been held that CalPERS acts within its authority in interpreting the provisions of JRS II. (*Danser v. Public Employees' Retirement System* (2015) 240 Cal.App.4th 885, 891.)

Following oral argument, we allowed MacMaster to file a supplemental letter brief regarding the phrase "unless the context indicates otherwise" in the JRS II definition of "nonmember." (§ 75550, subd. (b).) We also allowed Hiramoto to file a supplemental letter brief in response. MacMaster argues that the statutory language "unless the context indicates otherwise" in section 75550 has no significance with respect to the statutory definition of a JRS II nonmember. We are not persuaded by this argument, since a statutory construction " ' "making some words surplusage is to be avoided." [Citation.]' [Citation.]" (*Woosley*, *supra*, 3 Cal.4th at pp. 775-776.)

Hiramoto responds that the context of the JRS II statutory scheme "nonmember" means the divorced or separated spouse of a member. Hiramoto asserts that the provisions of section 75551 governing the division of the community property interest in a JRS II plan would be rendered inoperative if the section 75550 definition of "nonmember" as a spouse or former spouse who already has a separate JRS II account was applied. As we have discussed, we agree.

For these reasons, we determine that the context of the JRS II statutory scheme requires that MacMaster, as the former spouse of Hiramoto, be deemed a nonmember within the meaning of the section 75550, subdivision (b) definition of "nonmember," and therefore the provisions of JRS II apply to the division of his community property interest. MacMaster is therefore not entitled to an award of his community property interest that would be based on the present value of Hiramoto's potential maximum JRS II retirement benefit. We are not persuaded by MacMaster's reliance on the decision in *Colvin*, *supra*, 2 Cal.App.4th 1570 for a contrary conclusion because that decision concerned only JRS I.

### 2. Family Code section 2610

Alternatively, MacMaster contends that an equal division of his community property interest in Hiramoto's JRS II plan under Family Code section 2610, subdivision (a) requires that he receive the present value of Hiramoto's "matured pension benefits."

MacMaster also argues that he did not consent to division of his community interest as a cash-out of monetary credits under JRS II, and consent is required by Family Code section 2610, subdivision (a).

Hiramoto disagrees, arguing that Family Code section 2610, subdivision (a)(3)(D) expressly provides that consent of a nonemployee spouse to the division of the community interest is required only as to JRS I, since JRS II was omitted from the list of enactments for which consent is required.

Family Code section 2610, subdivision (a)(3)(D) provides: "Except as provided in subdivision (b), the court shall make whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, including all survivor and death benefits, including, but not limited to, any of the following: [¶] Upon the agreement of the nonemployee spouse, order the division of accumulated community property contributions and service credit as provided in the following or similar enactments: [¶] [¶] Article 2.5 (commencing with Section 75050) of Chapter 11 of Title 8 of the Government Code [JRS I]."

"Applicable here is the 'principle, commonly known under the Latin name of *expressio unius est exclusio alterius*, . . . that the expression of one thing in a statute ordinarily implies the exclusion of other things.' [Citation.] ' " '[I]f a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others . . . . It is an elementary rule of construction that the expression of one excludes the other. And it is equally well settled that the court is without power to supply an omission." ' [Citation.]" (*Kunde v. Seiler* (2011) 197 Cal.App.4th 518, 531 (*Kunde*).)

Since Family Code section 2610, subdivision (a)(3)(D) does not include JRS II (§ 75500 et seq.) in the enumeration of enactments that require the consent of the nonemployee spouse to the division of the community property in a retirement plan as provided by specific enactments, we determine under the principle of *expressio unius est*

*exclusio alterius* that JRS II is excluded. Therefore, consent of the former spouse is not required for the division of the community property interest in a JRS II retirement plan as provided by the provisions of JRS II. (See *Kunde*, *supra*, 197 Cal.App.4th at p. 531.)

We understand MacMaster to argue that since Family Code section 2610 was enacted in 1992, prior to the enactment of JRS II in 1994, the Legislature unintentionally failed to amend Family Code section 2610, subdivision (a)(3) to include JRS II in the list of enactments for which the consent of a nonemployee spouse is required to divide the community property interest in a retirement plan. However, we may not construe section 2610 subdivision (a)(3) to include JRS II in the list of enactments since it is " ' "well settled that the court is without power to supply an omission." ' [Citation.]" (*Kunde*, *supra*, 197 Cal.App.4th at p. 531.) Accordingly, we reject MacMaster's challenge to the trial court's order based on the application of Family Code section 2610, subdivision (a)(3)(D).

For these reasons, we conclude that the trial court did not err and we will affirm the judgment. Having reached this conclusion, we need not consider MacMaster's further contention that Hiramoto violated her spousal fiduciary duty with respect to the division of community property.

## IV. DISPOSITION

The November 18, 2020 judgment is affirmed. Costs on appeal are awarded to respondent Joni T. Hiramoto.

17

_____

Greenwood, P. J.


WE CONCUR:


_____

Danner, J.


_____

Bromberg, J.


H051793 Hiramoto v. MacMaster