Filed 1/27/26  Agcon v. Cornerstone Financial CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| AGCON, INC., | |
| Plaintiff and Appellant, | E081767 |
| v. | (Super. Ct. No. CIVDS1720699) |
| CORNERSTONE FINANCIAL et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Winston S. Keh, Judge.  Affirmed in part, reversed in part, and remanded.

Pope & Gentile and Daniel K. Gentile, for Plaintiff and Appellant.

Larson, Stephen G. Larson, A. Alexander Lowder, and Juliette Tran, for Defendants and Respondents.

1

# I.

# INTRODUCTION

Agcon, Inc. sold a parcel of vacant land in the City of Adelanto (the City) to Industrial Integrity Solutions, LLC (IIS). A few months later, the City rezoned the land to allow cannabis cultivation on it, which significantly increased its value.

Agcon then sued respondents for various fraud-based claims premised on the argument that respondents'[1] broker, Daniel C. Pocius, knew that the City planned on rezoning the land, but he intentionally withheld that information from Agcon to get a better deal. Agcon claimed that, by doing so, Pocius violated duties imposed under Civil Code section 2079.16 (section 2079.16). At the beginning of trial, Agcon argued that respondents also violated the purchase agreement for the land, but the trial court precluded Agcon from making that argument at trial on the ground that Agcon had not timely asserted it and instead had consistently stated its case was based on section 2079.16 alone.

After Agcon rested its case at trial, respondents moved for nonsuit on the grounds that Pocius did not violate section 2079.16. The trial court agreed and granted the motion. Later, the trial court partially granted Agcon's motion to tax costs but awarded respondents expert fees under Code of Civil Procedure section 998 (section 998). Agcon timely appealed.

---

[1] Respondents are IIS, Cornerstone Financial, Daniel C. Pocius, Frontier Homes, LLC, Frontier Enterprises, and Frontier Communities.

2

We first conclude that the trial court properly limited Agcon to arguing at trial that respondents violated section 2079.16 and precluded Agcon from arguing that its claims were contract-based. The main issue on appeal is thus whether the trial court correctly found that Pocius did not violate section 2079.16 and granted respondents' motion for nonsuit on that basis. We conclude the trial court erred in granting the motion because Agcon presented sufficient evidence for a jury to reasonably find that Pocius breached the "duty of honest and fair dealing and good faith" imposed under section 2079.16. We also conclude, however, that Pocius's section 2079.16 "duty to disclose all facts known to [him] materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties" did not require him to tell Agcon at the time of the parcel sale that the City was contemplating rezoning the parcel in the future. We therefore reverse the judgment, affirm in part and reverse in part the trial court's order granting respondents' motion for nonsuit, and reverse the order awarding fees to respondents under section 998.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Agcon owned a 9.43-acre parcel of vacant land in the City (the parcel). On October 26, 2016, Pocius called Agcon's President and CEO, Jonathan Hove, to express his interest in buying the parcel. At the time, Pocius, a licensed real estate broker, was

3

employed as Vice President for Land Acquisition for Frontier[2] and IIS, but he also owned his own brokerage, Cornerstone Financial.

Later that day, at a public City Council meeting, the City's Mayor Pro Tem, Jermaine Wright, a City Senior Planner, and the City Attorney discussed expanding the City's cannabis cultivation zone during the first reading of a proposed resolution to adopt Ordinance 553, which concerned the City's cannabis zoning. Wright stated that he wanted an amendment to a proposed resolution to expand the zone's boundaries along various streets in the City. The proposed boundaries included the area where Agcon's vacant land was located. The council approved the amendment at the meeting, but did not adopt the resolution, which was scheduled for further consideration.

The next day, Pocius met with Jonathan Hove to discuss purchasing the parcel. After some deliberations, the parties agreed to a price of $460,000 for the parcel. Later that day, October 27, 2016, the parties executed a purchase agreement for the sale, with IIS as the buyer, Cornerstone Financial (Pocius) as the agent/broker for IIS, and Agcon as the seller.

About two months later, in December 2016, the City adopted Ordinance 553. By doing so, the City expanded its cannabis cultivation zone's boundaries, which included the parcel for the first time.

---

[2] Like the parties, we collectively refer to respondents Frontier Homes, LLC, Frontier Enterprises, and Frontier Communities as "Frontier." For purposes of this opinion, there is no difference between the entities.

4

Because Agcon believed Pocius knew the zoning change was imminent and that the change would (and did) substantially increase the parcel's value, Agcon sued respondents in October 2017. Agcon alleged four causes of action: (1) violation of section 2079.16 (against Pocius and Cornerstone only), (2) fraud (against all respondents), (3) rescission (against IIS only), and (4) civil conspiracy (against all respondents). Agcon filed a first amended complaint (FAC) in February 2018, asserting the same four causes of action with the same material allegations. Agcon filed its operative second amended complaint (SAC) in September 2018, again asserting the same four causes of action with the same material allegations as the FAC. The thrust of Agcon's case was that Pocius owed Agcon a duty under section 2079.16 to disclose all material facts affecting the parcel's value, and he violated that duty by knowingly declining to tell Agcon that the parcel's value would dramatically increase in a few months after it was rezoned.

After Agcon presented its case-in-chief and rested, respondents moved for nonsuit on the ground that (1) Pocius did not know of the potential zoning change and, (2) even if he did, he owed no duty under section 2079.16 to tell Agcon of a forthcoming zoning change. The trial court agreed, finding that, under *Borba v. Thomas* (1977) 70 Cal.App.3d 144, respondents had "no legal obligation" to tell Agcon about any contemplated zoning change. The court therefore granted nonsuit to respondents.

Agcon then moved to tax respondents' costs. The trial court granted the motion in part but allowed respondents to recover $43,915.00 in expert fees pursuant to section 998. In doing so, the court rejected Agcon's argument that respondents' two section 998 offers to compromise were unreasonable.

The trial court entered judgment in respondents' favor and awarded them about $61,000 in costs. Agcon timely appealed.

III.

STANDARD OF REVIEW

"[C]ourts grant motions for nonsuit only under very limited circumstances." (*v. Atlantic Richfield Co.* (2003) 108 Cal.App.4th 327, 334-335.) The standard for obtaining a nonsuit is "difficult" to satisfy. (*A.M. v. Albertsons, LLC* (2009) 178 Cal.App.4th 455, 463.)

The trial court may grant nonsuit in a jury case only "'if the trial court determines that the plaintiff's evidence is insufficient as a matter of law to support a jury verdict in her favor." (*Garcia-Brower v. Premier Auto. Imports of CA, LLC* (2020) 55 Cal.App.5th 961, 971.) The trial court therefore may not grant a motion for nonsuit "'if [the] plaintiff's evidence would support a jury verdict in [the] plaintiff's favor.'" (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214.) We must reverse a judgment of nonsuit "'if there is "some substance to [the] plaintiff's evidence upon which reasonable minds could differ"'" and the law supports the plaintiff's claim(s). (*Garcia-Brower v. Premier Auto. Imports of CA, LLC, supra*, at p. 971.)

6

We review the grant of nonsuit de novo.  (*Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, 669.)  In doing so, we review the evidence in the light most favorable to the plaintiff and most strongly against the defendant, "resolving all presumptions, inferences, and doubts in favor of the plaintiff."  (*Ibid*.)  We also accept the plaintiff's evidence as true and disregard conflicting evidence.  (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 118.)

IV.

CONTRACT CLAIM

We first address Agcon's argument that the trial court improperly precluded Agcon from arguing that the purchase agreement imposed a contractual duty on respondents to disclose information about the potential zoning change and, in turn, limiting Agcon to arguing that respondents violated section 2079.16.  We find no error.

On the third day of trial, Agcon argued that language in the purchase agreement imposed a contractual duty on Pocius to disclose any information he had about the potential zoning change.  Specifically, Agcon pointed to page 14 of the purchase agreement, which provided that Pocius, as IIS's agent, owed Agcon "[a] duty to disclose all facts known to the agent, the broker, materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of the parties."

In respondents' view, this was the first time Agcon made the argument that respondents violated any contractual duty. Respondents thus moved for, and the trial court granted, an order precluding Agcon from arguing that the purchase agreement imposed on respondents "a general duty of disclosure apart from the duty of disclosure arising from . . . section 2079.16."

The trial court was right to do so. To begin with, the SAC does not suggest that Agcon was pursuing a claim based on a purported breach of contract. Agcon acknowledges that the first cause of action expressly alleges only a violation of section 2079.16. But Agcon maintains that its second cause of action for fraud alleged that respondents had a contractual duty under the purchase agreement to disclose information about the zoning changes.

That cause of action, however, does not even mention the purchase agreement beyond stating that Agcon would not have entered it had respondents disclosed information about the potential zoning change. The second cause of action does not mention page 14 of the purchase agreement, the duty that provision allegedly imposed on Pocius, or any suggestion that respondents violated a *contractual* duty. Even a generous, liberal reading of the SAC generally and the second cause of action specifically does not suggest Agcon asserted that respondents violated a contractual duty imposed by the purchase agreement. The second cause of action instead alleges a general fraud claim based in the common law.

8

More to the point, Agcon *repeatedly* stated before trial that its case was based on section 2079.16, without ever suggesting that respondents also breached the purchase agreement. Most notably, in its trial brief filed about a week before trial, Agcon explained that its complaint "alleges, among other things, that [respondents] perpetrated a fraud by failing to disclose the impending zon[ing] change as required by . . . [s]ection 2079.16." In the argument section of that brief, Agcon mentioned only section 2079.16 as a basis for respondents' liability, not the purchase agreement.

Agcon argued section 2079.16 as the only basis for respondents' liability on several other occasions before trial. In its August 2018 opposition to respondents' first motion for judgment on the pleadings, Agcon explained that its complaint "alleges, among other things, that [respondents] perpetrated a fraud by failing to disclose the impending zone change as required by . . . [s]ection 2079.16." There is no suggestion that the purchase agreement imposed a duty on respondents to disclose those facts. Similarly, in its May 2022 opposition to respondents' second motion for judgment on the pleadings, Agcon did not indicate, in the alternative or otherwise, that its claims arose from a purported contractual duty that respondents violated. Agcon instead argued "common law princip[les] are irrelevant to this dispute as this transaction, *and the SAC*, is governed by the <u>statutory</u> duty to disclose under . . . [s]ection 2079.16." (Italics added, underline in original.)

Agcon made a similar representation orally. At a hearing in September 2019, when the trial court asked Agcon about the basis for its second cause of action, Agcon's counsel explained: " . . . [T]he agent for the buyer is under a duty to disclose. And I recognize that is the statutory duty. That is why we said 'a statutory duty to disclose.'" At no point during that hearing did Agcon's counsel suggest that respondents had a contractual duty to disclose that they violated.

Agcon does not cite, nor can we locate, anywhere in the record where Agcon made clear before trial that its second cause of action was contract-based. The trial court thus properly precluded Agcon from arguing at trial that respondents had a contractual duty to disclose information about the potential zoning change. (Cf. *Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1380-1382 [amendment during trial to rely on different contractual theory prejudiced defendant, who was unable to conduct discovery or research to mount defenses to new theory].)

In any event, even if Agcon sought to hold respondents liable under a contract-based theory, its two causes of action allege a tort (fraud). As a result, any recovery resulting from respondents' purported breach of contract would be barred under the economic loss rule. (See *Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 13; 5 Witkin, Summary of California Law Torts § 2; 6 Witkin, Summary of California Law, Torts §§ 1177A, 1306, 1682.) Under this rule, Agcon was properly limited to arguing that respondents violated section 2079.16. (See *Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2019) 209 Cal.App.4th 1118, 1130.)

10

SECTION 2079.16 CLAIM

Because the trial court properly precluded Agcon from arguing respondents violated a contractual duty, Agcon was limited to arguing respondents violated section 2079.16.  And because there is no dispute that the statute only applies, if at all, to brokers, Agcon's entire case turns on whether Pocius violated the statute.[3]

Based on our independent review after the parties filed their initial briefs, we concluded that the statute did not apply because it may not have covered sales of "vacant land" when Agcon sold the parcel in 2016.

We observed as follows: section 2079.14, subdivision (a) provides that "[a] copy of the disclosure form specified in [s]ection 2079.16 shall be provided *in a real property transaction* . . . ."  (Italics added.)  The obligations under section 2079.16 thus apply only in "a real property transaction."[4]

---

[3] Respondents disputed below that the statute applied at all because, in their view, Pocius was not acting as IIS's (the buyer's) broker.  In their motion for nonsuit, however, they assumed for the purposes of the motion that Pocius was acting as IIS's broker, and they do not argue in their respondent's brief that Pocius was not a broker.  We will assume without deciding that Pocius was IIS's broker.

[4] Section 2079.14 directs that "[a] copy of the disclosure form specified in [s]ection 2079.16 shall be provided in a real property transaction" with certain conditions.  The disclosure form in section 2079.16 then states that the buyer's agent has a duty of disclosure to the seller.  Like the parties, we "assum[e] that the language of a *form* prescribed by statute can alter the common law duties of the buyer's agent, where there is no other language in the statute that affirmatively sets forth such an intention."  (Miller & Starr, 2 Cal. Real Est. § 3:67 (4th ed.).)  It would make no sense for the Legislature to mandate that the form be provided in various transactions but not impose the duties

*[footnote continued on next page]*

Section 2079.13 provides definitions for various terms used in sections 2079.14 and 2079.16, including "real property transaction." (§ 2079.13 ["As used in this section and [s]ections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings . . . ."].) The statute has been amended several times since first enacted in 1995.

In 2016, when the transaction at issue here occurred, the version of section 2079.13 then in effect defined a "real property transaction" as "a transaction for the *sale of real property* in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase." (Former § 2079.13, subd. (l).) In turn, the statute defined "real property" only as: (1) certain estates in property (not at issue here), (2) "*any commercial real property*," (3) "any leasehold in these types of property exceeding one year's duration," and (4) "mobilehomes" (*Id*., subd. (k), italics added.)

The version of section 2079.13 in effect in 2016 thus did not include expressly vacant land in its definition of "real property." (See Stats. 2014, ch. 200 (S.B. 1171), § 2, eff. Jan. 1, 2015.) That did not occur until the statute was amended in 2018, with an effective date of January 1, 2019. (See Stats. 2018, ch. 907 (A.B. 1289), § 38, eff. Jan. 1, 2019.)[5] Among other changes to section 2079.13, the amending legislation changed the

_____

enumerated in the form on agents who are required to provide it. (See § 2079.14, subds. (a)-(b).)

[5] We note that in *Greif v. Sanin* (2022) 74 Cal.App.5th 412, 427, we incorrectly stated that section 2079.16 was amended in 2015 to add that the agency disclosure provision applies to all real property transactions, including transactions involving vacant

*[footnote continued on next page]*

definition of "real property" to include "vacant land" and correspondingly amended the definition of "commercial property" to exclude "vacant land." (See *ibid*., amending § 2079.13, subds. (c) & (j).)

This legislative history of section 2079.13 arguably suggests that the version of the statute in effect in 2016 did not cover sales of vacant land, such as the parcel at issue in this case. (See Miller & Starr, 2 Cal. Real Est. § 3:28 (4th ed.) ["Previously, the statutory disclosures of agency relationships were required only where the property *constituted or was improved by* one-to-four dwelling units, or a lease of such property with a term in excess of one year, and mobilehomes."]) However, the version of section 2079.13 in effect in 2016 broadly defined "commercial real property" as "*all* real property" in California, except four enumerated kinds of residential property not at issue here. This arguably suggests that vacant land qualified as "commercial real property" under the version of section 2079.13 in effect in 2016.

---

land. Instead, we should have stated that sections 2079.13 and 2079.16 were amended in 2018 (effective January 1, 2019), and that the amendments extended section 2079.16's disclosure requirements to transactions involving "vacant land." In any event, that statement was dicta given that the sale of vacant land in that case occurred in 2012, long before any of the relevant amendments to section 2079.16 occurred.

We therefore asked for and received supplemental briefs from the parties answering two questions: (1) Does vacant land qualify as "commercial real property" under the version of section 2079.13 in effect in 2016? (2) If not, does section 2079.16 nonetheless apply to the sale of the vacant land at issue in this case?

We agree with Agcon that vacant land qualifies as "commercial real property" under the plain meaning of the 2016 version of section 2079.13, which broadly defined "commercial real property" as "*all* real property in the state," except a few kinds of residential property. Because vacant land is real property, it is by definition "commercial real property" under a plain reading of that statute. If the Legislature wanted to exclude "vacant land" from the definition of commercial real property, it could have done so, as evidenced by the fact that the definition expressly excludes four kinds of residential property.

However, we agree with respondents, and Agcon concedes, that vacant land does not qualify as "commercial real property" under the 2019 version of section 2079.13 (amended in 2018) since that version expressly excludes vacant land from the definition of "commercial real property." In respondents' view, this exclusion shows that the Legislature did not intend for vacant land to be considered "commercial real property" under the 2016 version of the statute.

But if respondents are correct that the 2018 amendments to section 2079.13 show that vacant land is not "commercial real property" under the 2016 version of the statute, then those amendments likewise show that vacant land is nonetheless real property under

14

the 2019 version of section 2079.13.  Although the amendments redefined commercial real property as excluding vacant land, the amendments also defined "real property" as *including* vacant land.  This means that under the 2019 version of section 2079.13's definitions of "real property," the sale of vacant land qualifies as a "real property transaction."  The amendments to section 2079.13's definitions thus show, if anything, that the Legislature intended for vacant land to be covered by section 2079.16's disclosure requirements.  This provides further support for our conclusion that the 2016 version of section 2076.13's expansive definition of "commercial real property" ("*all* real property in the state" except a few residential properties) should be read to include vacant land.  Taken together, the nearly all-inclusive definition of "commercial real property" in the 2016 version of section 2079.13, plus the definition of "real property" expressly including "vacant land" in subsequent versions of the statute leads us to conclude that the Legislature intended for vacant land to be covered by section 2079.13 in 2016.

In sum, section 2079.16 applied to the parties' transaction—a sale of vacant land in 2016.[6]

Thus, as a broker to a real estate transaction, Pocius owed Agcon the following duties imposed under section 2079.16:  (1) a duty of "diligent exercise of reasonable skill and care in performance of [his] duties," (2) a "duty of honest and fair dealing and good faith," *and* (3) a "duty to 'disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention

---

[6]  Respondents did not challenge this conclusion at oral argument.

15

and observation of, the parties.'" (*Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 414.)

Agcon correctly notes that the trial court focused entirely on a broker's third duty to disclose material facts when granting respondents' motion for nonsuit. As Agcon emphasizes, however, this case *also* concerns Pocius's duty of honest and fair dealing and good faith. We agree with Agcon that the trial court overlooked that fact and respondents overlook it on appeal.

At oral argument, respondents described Agcon's position as a "moving target" throughout the proceedings below and argued Agcon did not contend respondents violated the duty of honest and fair dealing and good faith imposed by section 2079.16. Respondents pointed out that Agcon's SAC did not clearly identify those duties as the basis for its first cause of action for breach of section 2079.16, nor did Agcon raise the argument in its oral opposition to respondents' oral motion for nonsuit.

It is true that Agcon's SAC only expressly identifies section 2079.16's duty to disclose as the basis for its first cause of action, "Breach of Violation of Statutory Duty." Respondents are also correct that Agcon did not mention the other statutory duty of honest and fair dealing and good faith when opposing Agcon's motion for nonsuit.

But, as Agcon explained at oral argument, its position was that Respondents violated section 2079.16, not just the statute's disclosure duty. Agcon thus argued on multiple occasions in the trial court that Respondents violated the duty of honest and fair dealing and good faith imposed by section 2079.16, including (1) at a hearing on

16

Respondents' motion for judgment on the pleadings, (2) in opposition to Respondents' third motion in limine, (3) in Agcon's trial brief, (4) in a special jury instruction Agcon proposed, and, (5) critically, in a mid-trial brief on the scope of respondents' duty.[7] Agcon also unambiguously argued many times at trial that the purchase agreement memorialized that respondents had a statutory duty to act honestly and in good faith, including in its opening statement, on direct examination of Hove, and when cross-examining Pocius. Despite all of this, respondents never suggested Agcon was or should be limited to arguing its only statutory duty was a duty to disclose.

More importantly in our view, however, is the fact that Agcon *repeatedly* argued in its opening brief that respondents had a statutory duty to act honestly and in good faith. Agcon unambiguously stated in the introduction of its opening brief that section 2079.16 imposes a duty on brokers to act honestly and in good faith and that Pocius violated that duty. The first line in the discussion section of Agcon's opening brief begins by stating, "In addition to imposing the duty of honesty and good faith upon real estate brokers, [section] 2079.16 . . . ." About a page later, Agcon argues that respondents "wanted Hove to believe Pocius . . . would act honestly and in good faith."

---

[7] The trial court ordered the parties to file briefs on the scope and nature of respondents' duty after a dispute arose about whether Agcon could raise a contract claim based on the purchase agreement. In its brief, Agcon argued on that, among other things, respondents had "a statutory duty . . . to act honestly and in good faith."

Later in its argument, Agcon argues respondents' position that Pocius did nothing wrong "denigrates a broker's duties to act honestly and in good faith," and his conduct "would not pass the honesty and good faith requirements." On the same page, Agcon then reiterates its position by arguing that "Pocius had the absolute duty to act honestly [and] in good faith," and that Hove believed "Pocius would act with honesty [and] in good faith." Finally, Agcon reaffirmed the argument it made below by arguing that "Pocius had a statutory *and* contractual duty to act honestly and in good faith." (Emphasis in original.)

In short, Agcon's opening brief argued at least five separate times that respondents were liable because Pocius had a duty under section 2079.16 to act honestly and in good faith and he violated that duty. Yet, respondents never suggested in their respondent's brief, like they did at oral argument, that Agcon forfeited the issue by failing to properly assert it below. As a result, Respondents forfeited their own forfeiture argument by failing to raise it until oral argument. (See *Sciarratta v. U.S. Bank N.A.* (2016) 247 Cal.App.4th 552, 560; *Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 633, fn. 17; San *Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 558-559 & fn. 28.) We will therefore address Agcon's argument that the trial court erroneously granted nonsuit because the evidence could allow a jury to find that respondents (Pocius) violated the section 2079.16 duty to act honestly and in good faith.

The duty to disclose is distinct from the duty to act honestly, fairly, and in good faith. (See *Nguyen v. Scott* (1988) 206 Cal.App.3d 725, 737.) As a result, a broker's conduct may breach the duty of honest and fair dealing while not violating (or even implicating) the duty to disclose. (See *ibid*. [allegations that broker secretly bid on same property as client alleged breach of duty of honest and fair dealing].) A breach of the duty to disclose generally involves some kind of misrepresentation, omission, or concealment that amounts to fraud. (See *Horiike v. Coldwell Banker Residential Brokerage Co.* (2016) 1 Cal.5th 1024, 1039-1040.) But it does not follow that a broker's failure to disclose information, while perhaps not reaching the level of fraud, could nonetheless amount to a breach of the broker's duty under section 2079.16 to act honestly, fairly, and in good faith. (See e.g., *Nguyen v. Scott*, *supra*, at p. 736; see also *Holmes v. Summer* (2010) 188 Cal.App.4th 1510, 1525 (*Holmes*) [declining to determine whether sellers' brokers' failure to disclose information about property was fraudulent because, "at a minimum," the brokers breached their duty under section 2079.16 to act fairly by failing to make disclosures].)

We thus agree with Agcon that the fact that Pocius may not be liable for fraud under *Borba v. Thomas*, *supra*, 70 Cal.App.3d 144, *Brakke v. Econ. Concepts, Inc.* (2013) Cal.App.4th 761, or other fraud cases does not mean that he nonetheless could be liable for violating his section 2079.16 duty to act honestly, fairly, and in good faith. As Agcon puts it, even if Pocius's conduct were "legally permissible" since it did not amount to

19

actionable fraud, it nonetheless might "not pass the honesty and good faith requirements" of section 2079.16.

Viewing the evidence de novo and in the light most favorable to Agcon, while "resolving all presumptions, inferences, and doubts in" its favor, we conclude a jury could find that Pocius breached his duty of honest and fair dealing and good faith. (*Hernandez v. Amcord, Inc.*, *supra*, 215 Cal.App.4th at p. 669.)[8]

During his trial testimony, Pocius denied having any special knowledge about the City Council's rezoning plans that could affect Agcon's parcel. He specifically denied that he met with or talked with any City Council officials, in secret or otherwise, about any such impending zoning change. He also denied that he knew Agcon's parcel would be included in a new cultivation zone that the City was in the process of approving.

Some of his emails, however, suggest otherwise. On October 10, 2016, Pocius emailed Frontier employee Naseem Farooqi a spreadsheet with the subject line, "List of APNs for New Cultivation Zone." The spreadsheet identified Agcon's parcel as one of the properties.

Less than an hour later, Farooqi emailed Pocius with a spreadsheet attached. The spreadsheet identifies various properties by APN, including Agcon's parcel. In the email, Farooqi outlined a timeline in the following six weeks listing four dates with corresponding City Council items, including a "Special Planning Commission Meeting"

---

[8] We emphasize that we are not resolving any conflicts in the evidence and express no opinion on how the jury should view the evidence.

20

on October 25, 2016." The email then lists three agenda items for that meeting. The first is an "Ordinance Amendment," which Farooqi notes would "[s]pecify cultivation can exist within cultivation zone boundaries." The second agenda item is "Create New Cultivation Zone," under which Farooqi states, "Include APNs from attachment." Farooqi concludes the email by stating, "[u]pon recommendation for approval from Planning Commission, items would go for approval to the City Council on November 9, and a special meeting of the City Council, November 23." Two weeks after these email exchanges, Pocius approached Agcon to discuss purchasing the parcel for Frontier.

A jury could reasonably find that these emails during this timeline show that, at a minimum, Pocius knew the City was considering rezoning Agcon's property to allow for cannabis cultivation in the upcoming months. Although that was not guaranteed, a jury could reasonably find that it was unfair, dishonest, or in bad faith for Pocius not to tell Agcon of this possibility while simultaneously representing Frontier.

A case Agcon cites *Holmes*, *supra*, 188 Cal.App.4th 1510, is instructive, though not on all fours with this case. There, the defendant-brokers listed a property for sale on different occasions for prices ranging between $750,000 to $800,000, and eventually offered to sell the property to the plaintiffs for $749,000. (*Id*. at p. 1516.) According to the plaintiffs, however, the offer and purchase documents did not disclose that the property was encumbered with three deeds of trust totaling over $1.1 million, meaning that the property could not be transferred to the plaintiffs free and clear. (*Ibid*.) The brokers argued that they had no obligation to disclose the encumbrances because it would

21

have required them to disclose that the seller might lose money on the deal. (*Id.* at p. 1518.)

The *Holmes* court noted that, assuming the plaintiffs' allegations were true, the brokers' listing prices were "less than honest." (*Holmes*, *supra*, 188 Cal.App.4th at p. 1525.) The court, however, declined to decide whether those alleged representations were fraudulent because the brokers had "the affirmative duty to treat [the plaintiffs] honestly and fairly" under section 2079.16 and, "[a]t a minimum, the brokers did not act fairly towards [the plaintffs] when signing them up for a real estate purchase the brokers had reason to know was a highly risky proposition." (*Ibid*.) The court reasoned that "[s]urely a sense of rudimentary fairness would dictate that buyers in a case such as this should be informed before they open escrow and position themselves to consummate the same that there is a substantial risk that title cannot be conveyed to them." (*Id*. at p. 1523.)

We acknowledge the facts in *Holmes* differ significantly from the facts here. But *Holmes* shows that a broker in a real estate transaction can breach the section 2079.16 duty to act fairly, honestly, and in good faith by failing to disclose facts the broker knows that any buyer or seller certainly would want to know about the property.

Here, for instance, a jury could permissibly find that Pocius knew about the City's considered zoning change, expected the change would significantly increase the value of Agcon's parcel, and intentionally withheld any information he knew about the potential zoning change from Agcon with the hope that he could get a better deal for the parcel for

Frontier, his employer. If the jury were to make these findings, it could likewise permissibly find that, "[a]t a minimum, [Pocius] did not act fairly toward" Agcon, thereby breaching his duty under section 2079.16. (*Holmes*, *supra*, 188 Cal.App.4th at p. 1525.)

For this reason, we conclude the trial court erred in granting Respondents' motion for nonsuit since it focused only on the duty to disclose under section 2079.16. We therefore reverse the order granting the motion because it overlooked Agcon's claim that Pocius violated his section 2079.16 duty to act fairly, honestly, and in good faith.

But, as respondents urged at oral argument, we must still resolve whether the trial court correctly found that respondents cannot be liable for violating the section 2079.16 duty to disclose.

Respondents persuasively argue that, under the plain language of section 2079.16's duty to disclose, Pocius had no duty to disclose to Agcon that the City was considering rezoning the parcel.[9] Again, Pocius had a "duty to disclose all *facts* known to [him] *materially affecting* the value or desirability of the property that are not known to, or within the diligent attention and observation of, [Agcon]." (§ 2079.16, italics added.) The two italicized portions of the statute present two distinct problems for Agcon's position.[10]

_____

[9] We therefore need not decide whether respondents are correct that *Borba* and *Brakke*, two cases not involving section 2079.16, control here.

[10] We reject respondents' argument that, as a matter of law, the City's plans to rezone the property at the time of the sale were "within the reach of the diligent attention and observation of" Agcon. That is an issue of fact. (See *Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1544.)

First, the only purported "fact" at the time of parcel's sale was that the City was considering rezoning the parcel in the future. Even if, as Agcon contends, Pocius knew about the City's plans, had special knowledge about them due to "secret meetings" with the City, and expected the zoning change to occur shortly after the parcel's sale, his knowledge was not a "fact" under section 2079.16. (See *Horiike v. Coldwell Banker Residential Brokerage Co.*, *supra*, 1 Cal.5th at p. 1040 [collecting cases involved past facts that had to be disclosed under section 2079.16].) It was instead an opinion about how the City was going to act in the future. Speculation about how the parcel may be zoned "at some unspecified future time depending on factors that may never exist" is not a "fact" under section 2079.16. (*Assilzadeh v. California Federal Bank*, *supra*, 82 Cal.App.4th at p. 412.)

This brings us to the second problem with Agcon's position. The duty to disclose under section 2079.16 is written in the present tense ("materially affecting"). Under the plain language of the statute, Pocius had a duty to disclose only those facts materially affecting the parcel *at the time of the sale*. By definition, *potential* future acts by the government are not "materially affecting" a property at the time of the sale.

For these reasons, we conclude that, at the time of the sale, Pocius's failure to disclose that the City was considering rezoning the parcel did not violate his section 2079.16 duty to disclose. The trial court thus properly granted Respondents' motion for nonsuit on Agcon's claim that Pocius violated his section 2079.16 "duty to disclose all facts known to [him] materially affecting the value or desirability of the property . . . ."

## VI.

## DISPOSITION

The judgment is reversed.  The trial court's order granting respondents' motion for nonsuit is affirmed in part and reversed in part.  The order is affirmed as to Agcon's claim that respondents violated the duty to disclose under section 2079.16, but the order is reversed as to Agcon's claim that respondents violated section 2079.16's duty of honest and fair dealing and good faith.  The trial court's order granting respondents' request for costs under section 998 is thus reversed.  The matter is remanded for further proceedings consistent with this opinion.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

FIELDS
J.

25